UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM G. HEROD, JR.,

                Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

---

**REPORT AND RECOMMENDATION**

06-CV-0767(T)(M)

      This case was referred to me by Hon. Michael A. Telesca to hear and report in accordance with 28 U.S.C. §636(b)(1) (Dkt. #10). Before me are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. ##7, 8). For the following reasons, I recommend that the Commissioner's motion be GRANTED, and that plaintiff's motion be DENIED.

## PROCEDURAL BACKGROUND

      Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") (Dkt. #1). Plaintiff filed an application for SSI on January 30, 2004 (T15, 41-47). On January 13, 2006, an administrative hearing was conducted before ALJ Daniel A. Rubini (T15, 256-80). Plaintiff was represented at the hearing by Susan Knoll, a paralegal (T15). On January 27, 2006 ALJ Rubini issued a decision denying plaintiff's claim on the ground that plaintiff was not disabled and had not been disabled at any relevant time with respect to the

pending SSI application (T12-14, 15-23). ALJ Rubini's determination became the final decision of the Commissioner on October 27, 2006, when the Appeals Council denied plaintiff's request for review after plaintiff submitted additional evidence (T4-6).

## FACTUAL BACKGROUND

1. **Medical Evidence**

    A. **Plaintiff's Medical History**

    From November 12, 2001, through March 8, 2002, plaintiff received treatment at State University of New York Psychological Services (T90-98). In a termination report dated March 8, 2002, Joanna Davilla, Ph.D., diagnosed plaintiff with major depressive disorder, single episode, in partial remission (T90). Plaintiff was "mildly depressed with impairing problems with motivation"(Id.). The report indicated that plaintiff's January 10, 2002 Global Assessment of Functioning ("GAF") score was 61 (Id.). Treatment was discontinued because plaintiff missed numerous appointments (Id.).

    On September 21, 2003, plaintiff called Crisis Services, Emergency Outreach Services for assistance after his home was robbed (T134). He advised Crisis Services that he was depressed, felt hopeless, and was experiencing suicidal ideations. However, when Crisis Services arrived, plaintiff denied any suicidal ideations and agreed to contact the Crisis Service if needed (Id.).

    From June 28, 2003 to June 23, 2005, plaintiff was treated at the Jewish Family Service of Buffalo and Erie (T168-80, 181-251). Kevin J. Gorman, M.D. examined plaintiff on March 23, 2004 and found that he had a "very retarded type of depression to the point that he is

living in one room ... and does not take care of his house" (T177). Dr. Gorman diagnosed plaintiff with major depressive disorder, severe, currently in remission, alcohol dependence in remission, personality disorder not otherwise specified (NOS) with obsessive compulsive, passive dependent and narcissistic features, as well as moderate exogenous obesity and pyrosis due to stress (T179). He also prescribed Wellbutrin, recommended that plaintiff read several self-help books, and encouraged plaintiff to try to do "something creative again." (T179-80). Dr. Gorman measured plaintiff's GAF at 55 (T179). On April 20, 2004, Dr. Gorman noted that plaintiff was "responding to Wellbutrin . . . he is not lethal" (T175).

On June 22, 2004, plaintiff advised John U. Napoli, M.D. that Wellbutrin was ineffective and his dosage was increased (T174). Dr. Napoli found plaintiff to be stable and not lethal (Id.). On September 21, 2004, Dr. Napoli reported that plaintiff was doing well on the increased dosage of Wellbutrin, and again reported that he was stable and not lethal (T173).

On October 25, 2004, plaintiff began treatment with Fanhan Iqbal, M.D. (T172). Plaintiff reported that Wellbutrin helped his condition and that he was doing "quite well" (Id.). He was able to leave his house when necessary. Plaintiff denied major symptoms of depression or suicidal ideations or plans (Id.). His mood and appetite was fair and Dr. Iqbal did not observe any evidence of lethality (Id.).

Progress notes from plaintiff's counselors at Jewish Family Service indicate that on October 28, 2004, plaintiff mentioned to his counselor that he needed to decrease his marijuana use (T196). However, in April and May 2005, the notes indicate that plaintiff continued to use marijuana (T184). On July 5, 2005, plaintiff stated that he was doing "fairly well" and that his mood was "fairly stable" (T239). Plaintiff admitted to using marijuana for the

past two to three weeks (Id.). Dr. Iqbal advised that plaintiff stop taking marijuana while on anti-psychotic medications (Id.). He detected no lethality or suicidal ideations (Id.).

On November 29, 2005, plaintiff complained about his medications again (T238), and Dr. Iqbal prescribed Lexapro and detected no evidence of lethality (Id.).

### B.     Consultative Examinations

On March 30, 2004, Renee Baskin-Creel, Ph.D., a consultative psychologist, examined plaintiff (T99-102). He also reported a history of marijuana dependency which had ended in 1997, and an "increase of appetite and a weight gain of about 40 pounds over the last 6 months" (T99-100). Dr. Baskin-Creel opined that plaintiff's thought-processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia (T100). Affect and mood was dysphoric (Id.). Plaintiff was "mildly impaired" in attention, concentration, and recent and remote memory due to anxiety and nervousness in the evaluation (T101). His judgment and insight were fair to good (Id.). Dr. Baskin-Creel opined that plaintiff would be able to follow and understand simple directions and instructions, consistently perform simple tasks, learn new tasks, and perform complex tasks independently (T101). She further opined that plaintiff may have some difficulty maintaining attention and concentration, making appropriate decisions, relating adequately with others, and appropriately dealing with stress (Id.). Dr. Baskin-Creel diagnosed plaintiff with depressive disorder, not otherwise specified, and offered a "fair" prognosis "given the recent exacerbation of psychiatric illness" (T102).

On March 30, 2004, plaintiff was examined by Christine Holland, M.D., a consultative internist (T103-06). Dr. Holland noted that plaintiff had prior surgery to his right

hand and the 4th and 5th fingers of the right hand were still curled slightly (T103). Plaintiff had a little difficulty with extension, but otherwise his functioning was normal (Id.). Dr. Holland noted past use of marijuana and alcohol (Id.). Plaintiff needed no assistive devices (Id.). Plaintiff reported that he was able to cook but was unable to clean, do laundry, and shop due to lack of energy (Id.). Plaintiff was in no acute distress. His physical exam, other than his right hand abnormality, was normal and disclosed no physical limitations (T104-106). Dr. Holland found no evidence of hallucinations, delusions, impaired judgment or significant memory impairment. She diagnosed plaintiff with depression, subject to a separate psychiatric evaluation, and right hand abnormality (T106).

On May 14, 2004, Hillary Tzetzo, M.D., a State agency review psychiatrist, prepared a mental residual functional capacity assessment form and a psychiatric review technique form based on plaintiff's medical records (T108-26). Dr. Tzetzo opined that plaintiff had a medically determinable impairment, depressive disorder NOS, and personality disorder NOS (T116). However, plaintiff's impairments did not satisfy the diagnostic criteria of a Listing (T116). She also opined that plaintiff was moderately limited in 10 to 20 areas of mental activity, but not significantly limited in the remaining 10 areas of mental activities (T108-09). Dr. Tzetzo opined that if plaintiff complied with all psychiatric recommendations, he should be able to understand and follow work directions in a low contact work setting, maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work-related decisions in a low contact work setting (T125).

On May 19, 2004, D. Hart, M.D., a State agency review physician, reviewed the medical evidence and prepared a physical residual functional capacity assessment (T128-33). Dr.

Hart concluded that plaintiff had no exertional limitations, and that he did not complain of any physical symptoms (T129-131).

### 2.     Administrative Hearing Conducted on January 13, 2006

#### A.     Plaintiff's Testimony

Plaintiff, a 49 year old college educated artist, sculptor and designer, testified that his severe depression prevents him from working (T259, 263). Plaintiff testified that his ability to pursue work, as well as his management of daily living activities, was deteriorating (T263). He further testified that his disability prevented him from completing his commissions that he had accepted as a designer, sculptor and artist in a timely manner (T259). Plaintiff testified that in September 2003, his therapist had advised him to stop working because "it was just too damaging" (T263). When plaintiff's house was robbed in September 2003, it stopped plaintiff "from everything" (T264).

Plaintiff testified that he sees his counselor once a week and Dr. Iqbal every few months to monitor his medication (T266-67). Plaintiff takes Wellbutrin, Lexapro, and Hydroxyzine Pamoate (T267). Plaintiff testified that with medication he is not as suicidal, although he feels suicidal once in a while (T272). Despite these medications, plaintiff also suffers from anxiety and panic attacks two or three times a month (Id.). Sometimes plaintiff is able to do work around the house and go food shopping (T269). Other times his friends come by and take him shopping (T270).

### B.  Vocational Expert Testimony

Vocational expert Bess Mindy Lubeck categorized plaintiff's past work as a sculptor as light and skilled work as categorized in the Dictionary of Occupational Titles ("DOT"), but heavy as performed by plaintiff (T273). Plaintiff's past work as a designer, and ornamental metal worker was medium and skilled work (T273-74). Plaintiff's past work as a painter was light and skilled work (T274).

ALJ Rubini asked Ms. Lubeck if plaintiff had any transferable skills relevant to jobs in the semi-skilled range (Id.). Ms. Lubeck replied that plaintiff's transferable skills were "mostly art related" and would apply to jobs such a jewelry enameler (T274-75). ALJ Rubini asked whether there were jobs of a lower, unskilled level for a person who would have limited interaction with the public and limited concentration at a lower stress level (T276). Ms. Lubeck responded that such a person could perform light work such as housekeeping/cleaner and hand packer (T277). She estimated that these jobs were available locally and nationally (Id.).

### 3.  ALJ Rubini's Decision dated January 27, 2006

ALJ Rubini found that plaintiff had not engaged in substantial gainful activity since July 1, 2003, and had severe medically determinable impairments of "depression, obesity, and S/P right hand surgery" (T17). However, ALJ Rubini found that plaintiff's impairments or combination of impairments did not meet or equal any section of the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4 (T18). ALJ Rubini concluded that plaintiff had "the residual functional capacity to perform work activity at any exertional level. He has not alleged that he suffers with any type severe physical impairment that would cause any exertional

limitations. He suffers with a mental impairment in the form of depression, the symptoms of which mildly limit his non-exertional work related activities." (T18).

ALJ Rubini determined that plaintiff was unable to perform his past relevant work due to his mental impairment (T22). However, relying on Ms. Lubek's testimony, ALJ Rubini found that plaintiff had the capacity to perform other work, including housekeeping/cleaner and hand packer (T23). Therefore, he concluded that plaintiff was not disabled (Id.).

### 4. Evidence Submitted After ALJ Rubini's Decision

On September 9, 2006 plaintiff received permission from the Appeals Council to file additional evidence (T8). By letter dated October 3, 2006, plaintiff's counsel submitted a Medical Assessment Form of Ability to Do Work-Related Activities (Mental) dated April 10, 2006 (T252-55). Mohammed Hussain, M.D. indicated that since March 23, 2004, "per Dr. Gorman - previous agency psychiatrist", plaintiff has had a "poor" ability to *inter alia* make occupational, performance and social adjustments (Id.). He opined that plaintiff was currently disabled from active employment, but was able to manage benefits in his own best interest (T255).

### 5. Appeals Council's Determination

The Appeals Council found that the additional information submitted did "not provide a basis for changing the Administrative Judge's decision", and denied plaintiff's request for review (T4-5).

## DISCUSSION AND ANALYSIS

1. **Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo*, nor substitute its findings for those of the Commissioner. Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision may be reversed only when it is based on legal error or is not supported by substantial evidence in the record as a whole. Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner. Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, I must first determine "whether the Commissioner applied the correct legal standard". Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

**B.    The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The

> Commissioner bears the burden of proof on this last step,
> while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000); see 20 C.F.R. §§404.1520, 416.920.

3. **Did the Appeals Council err in not evaluating the retrospective opinion of Dr. Hussain?**

Plaintiff argues that the Appeals Council erred by failing to assign a weight or to properly evaluate the retrospective opinion of Dr. Hussain which was submitted following the administrative hearing and had an obligation to do so whether he was considered a treating or non-treating physician (Dkt #8, p. 4; Dkt. #13, p. 3). In response, the Commissioner contends that the Appeals Council considered Dr. Hussain's opinion and did not find that it provided a basis for changing ALJ Rubini's opinion (Dkt #7, p. 20). The Commissioner argues that Dr. Hussain's opinion was not entitled to controlling weight because no treating relationship with plaintiff had been established (Id.). Moreover, even if such a relationship existed, the opinion is inconsistent with the other substantial evidence in the record (Dkt. #7 p. 21).

The regulations expressly authorize a claimant to submit "new and material" evidence to the Appeals Council where it relates to the period on or before the date of the ALJ's decision, without a "good cause" requirement. See 20 C.F.R 404.970(b), 404.976(b)(1), 416.1470(b); see also Perez v. Chater, 77 F. 3d 41, 45 (2d Cir. 1996). "When the Appeals Council denies review after considering new evidence, the Secretary's final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, supra, 77 F. 3d at 45. Accordingly, the additional evidence also becomes part of the administrative record on appeal when the Appeals Council denies review. See id.

-11-

Generally, the ALJ must give controlling weight to the opinion of a treating physician if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. See 20 C.F.R. §404.1527(d)(2); Halloran v. Barnhart, 362 F. 3d 28, 32 (2d Cir. 2004). "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship* with you" (emphasis added). See 20 C.F.R. §416.902. "Non-treating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." Id.

Here, there is no indication that Dr. Hussain was plaintiff's treating physician. Dr. Hussain's assessment indicated that his finding that plaintiff's limitations had existed since March 23, 2004 was based upon the findings of plaintiff's previous psychiatrist, Dr. Gorman (T255). Nothing in the record indicates that Dr. Hussain has ever examined plaintiff. He is not mentioned in any of records from Jewish Family Service prior to the ALJ's decision. Accordingly, "the record is insufficient, . . . to compel a conclusion that Dr. [Hussain] is . . . a treating physician, because there is no clear evidence that Dr. [Hussain's] involvement with [plaintiff] extended beyond [his] writing one letter to the Appeals Council . . . ". Snell, supra, 177 F. 3d 128 at 133.

Furthermore, Dr. Hussain's assessment is inconsistent with other substantial evidence in the record. Although Dr. Husssain relies on Dr. Gorman's findings, Dr. Gorman's

records do not contain any opinion that plaintiff had "poor" ability to make occupational, performance and social adjustments.

Plaintiff's reliance on Snell, supra, is misplaced (Dkt. #7, p.7). In Snell, the Appeals Council *sua sponte* reconsidered and reversed the ALJ's decision. 177 F. 3d at 132. The plaintiff argued that in doing so the Appeals Council ignored the opinions of three of her treating physicians. Id. at 133. The Second Circuit agreed that the Appeals Council had erred by not explaining the weight that it gave to the opinions of two of plaintiff's treating physicians. Id at 134. However, it specifically found that the Appeals Council did *not* have an obligation to explain the weight given to the opinion of the third physician, finding him to be a non-treating physician. Id. at 133 ("We have already stated that Dr. Moore need not be considered among the treating physicians, but the Appeals Council did have an obligation to explain the weight it gave to the opinions of the other two [treating physicians]").

Likewise, the facts of Amidon v. Apfel, 3 F. Supp. 2d 350 (W.D.N.Y. 1998) (Larimer, J.) and Brown v. Apfel, 991 F. Supp. 166 (W.D.N.Y. 1998) (Larimer, J.), upon which plaintiff relies, are readily distinguishable (Dkt. #13, p. 2). In each of these cases the Appeals Council refused to review the ALJ's decision although it had received submissions from the plaintiff's treating physician refuting the findings contained in the ALJ's decision. Brown, supra, 991 F. Supp. at 169, 172; Amidon, supra, 3 F. Supp. 2d at 356.

Where, as here, no treating or examining source's opinion is at issue, the Appeals Council is not required to provide an explanation for rejecting that opinion. See Snell, supra, 177 F. 3d at 133. Rather, "the Appeals Council is only required to review the entire record, which includes any new, material evidence submitted, and to determine if any of the administrative law

judge's determinations go against the weight of the evidence." Fernandez v. Apfel, 1999 WL 1129056, *3 (E.D.N.Y. 1999). "No requirement is imposed on the Council to give a detailed description of the new medical evidence submitted or to explain its impact on the claimant's case." Id.; see Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D.Va. 2000) ("The regulations do not explicitly require the Appeals Council to provide written findings with respect to any new evidence and its impact in light of the overall record and that this facilitates orderly decision-making within the agency"). Accordingly, I conclude that the Appeals Council satisfied its obligation by examining Dr. Hussain's assessment and finding that it did not provide an adequate basis for changing ALJ Rubini's decision (T4-7).

### B. Did ALJ Rubini properly factor plaintiff's obesity?

Plaintiff argues that even though ALJ Rubini found obesity to be a severe impairment at Step 2 of the sequential evaluation process, he failed to discuss its impact on plaintiff's RFC (Dkt. # 8, p. 8). In response, the Commissioner asserts that even though plaintiff had a combination of severe impairments, including obesity, ALJ Rubini properly determined that the impairments did not affect plaintiff's capacity to perform unskilled work (Dkt. #7, pp. 17-18; Dkt. #12, Point 3).

"Obesity is not in and of itself a disability." Cruz v. Barnhart, 2006 WL 1228581, *9 (S.D.N.Y. 2006)(citing SSR 02-1p, 2002 WL 31026506 (2002)). "However, obesity may be considered severe - and thus medically equal to a listed disability - if alone or in combination

with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities". Id.

Despite the fact that plaintiff neither alleged that his obesity constituted an impairment in his SSI application (T41) or at the administrative hearing (T254), ALJ Rubini found that plaintiff's obesity was a severe impairment at step two of the sequential evaluation (T17), but failed to specifically address obesity in his RFC assessment (T18-21). "An ALJ's failure to explicitly address a claimant's obesity does not warrant remand. . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions". Cruz, supra, 2006 WL 1228581 at *9; see also Presswood v. Astrue, 2008 WL 740364, *5 (N.D. Ind. 2008) (Although "the ALJ only 'briefly' noted her obesity when he stated that it was one of two severe impairments, [the plaintiff] has provided no argument to address how her obesity affects her ability to work other than to suggest that it generally exacerbates her impairments.").

Here, it is evident that plaintiff's obesity was factored into ALJ Rubini's RFC determination. In finding that plaintiff had the RFC to perform light work, ALJ Rubini accorded Dr. Holland's assessment substantial weight (T19). Dr. Holland found that, other than plaintiff's right hand abnormality, his physical exam examination was normal (T104-106). ALJ Rubini also accorded substantial weight to the psychological assessment of Dr. Baskin-Creel (T19) who acknowledged plaintiff's weight gain, but did not indicate that it increased the severity or functional limitation of his mental impairments (T99). See SSR 02-1p ("obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record").

Therefore, I conclude that ALJ Rubini properly considered plaintiff's obesity in making his RFC determination.

## CONCLUSION

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings (Dkt. #7) be GRANTED, and that plaintiff's motion for judgment on the pleadings (Dkt. #8) be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. ("Rule") 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, written objections shall specifically identify the portions of

the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority. Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation, may result in the District Judge's refusal to consider the objection).

**SO ORDERED.**

Dated: July 7, 2008

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge